IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GUSTAVO PUERTO              :     CIVIL ACTION
                                         :
                v.                 :
                                         :
ANDREW SAUL, Commissioner of     :     NO.  19-3109
Social Security                   :

**<u>MEMORANDUM AND ORDER</u>**

ELIZABETH T. HEY, U.S.M.J.                                May 27, 2020

Gustavo Puerto ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision denying in part his applications for disability insurance benefits ("DIB").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and will affirm the Commissioner's decision.

## I.    **<u>PROCEDURAL HISTORY</u>**

Plaintiff applied for DIB on December 10, 2014, alleging disability beginning on April 10, 2010.  <u>Tr.</u> at 49, 239-40, 275.[1]  The application was denied initially, <u>id.</u> at 49-58, and Plaintiff requested an administrative hearing before an ALJ.  <u>Id.</u> at 65-66.  An administrative hearing took place on November 3, 2017, during which Plaintiff testified with the assistance of a Spanish interpreter.  <u>Id.</u> at 1394-1412.[2]  On April 17, 2018, the

---

[1]Plaintiff's date last insured is December 31, 2015, requiring him to establish that he became disabled on or before that date to qualify for DIB.  <u>Tr.</u> at 29, 49, 275; <u>see</u> <u>also</u> 20 C.F.R. § 404.101(a).

[2]The Commissioner filed the transcript of the November 3, 2017 hearing as a supplement to the certified administrative record, stating that it was omitted due to

ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  Id. at 26-36.

The Appeals Council denied Plaintiff's request for review on May 22, 2019, id. at 1-3,

making the ALJ's April 17, 2018 decision the final decision of the Commissioner.  20

C.F.R. § 404.981.

Plaintiff commenced this action in federal court on July 17, 2019.  Docs. 1 & 2.

The matter is now fully briefed and ripe for review.  Docs. 15 & 16.[3]

## II.   LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusions that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v.

Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)).  The court has plenary review of legal

issues.  Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

---

inadvertence.  See Docs. 13 & 17.  The original record contained the transcript of a brief
hearing conducted on July 28, 2017, which was continued so that Plaintiff could obtain
counsel.  Tr. at 42-47.

[3]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  See Standing Order, In RE:  Direct Assignment of Social Security Appeal
Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 9.

impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1.      Whether the claimant is currently engaged in substantially gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.   DISCUSSION

Plaintiff was born on November 20, 1954, and thus was fifty-five years of age at the time of his alleged disability onset date (April 10, 2010) and sixty-one at the time of his date last insured (December 31, 2015). Tr. at 49, 275, 1398. He is five feet, two or

three inches tall, and weighs between approximately 134 and 143 pounds.  Id. at 49, 279,

1399.[4]  Plaintiff lives in a house with his wife and two minor children.  Id. at 286, 1399.

He completed four years of college and has more than twenty years of experience

performing automobile body work/painting.  Id. at 280, 294, 1400-01.

### A.    ALJ's Findings and Plaintiff's Claim

In the April 17, 2018 decision under review, the ALJ found at step one that

Plaintiff has not engaged in substantial gainful activity since the alleged disability onset

date of April 10, 2010, through his date last insured of December 31, 2015.  Tr. at 29.  At

step two, the ALJ found that Plaintiff suffered from severe impairments of bilateral

primary open angle glaucoma ("POAG"), carotid artery disease, and degenerative joint

disease ("DJD").  Id.  The ALJ found that Plaintiff did not have an impairment or

combination of impairments that met the Listings, id. at 30, and that he retained the RFC

to perform a full range of work at all exertional levels with the following non-exertional

limitations: he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps

and stairs, but he is unable to climb ladders, ropes, and scaffolds; and he cannot tolerate

exposure to hazards such as unprotected heights or dangerous machinery.  Id.  The ALJ

found that Plaintiff could not perform any past relevant work, id. at 34, and that

considering Plaintiff's age, education, work experience, and RFC, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.  Id. at

35.  As a result, the ALJ concluded that Plaintiff was not disabled.  Id. at 36.

---

[4]Plaintiff testified that he lost about forty pounds after being diagnosed with diabetes and changing his diet.  Tr. at 1407.

Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ improperly weighed the medical opinion evidence.  Doc. 15.  Defendant counters that the ALJ's opinion is supported by substantial evidence.  Doc. 16.

### B.    <u>Summary of the Medical Evidence</u>

Plaintiff initially alleged disability due to glaucoma, decreased visual acuity, acute mastoiditis without complication, rheumatoid arthritis, bilateral carotid artery stenosis, mixed hyperlipidemia, pre-diabetes, sleep apnea, and joint pain.  <u>Tr.</u> at 49, 279.[5]  The record also contains diagnoses of DJD.  <u>Id.</u> at 610, 829, 844, 859.

The medical record includes treatment notes from Orlando Penaloza, M.D., of Lehigh Valley Hospital and Health Network, Plaintiff's primary treating physician, for the period from July 2011 through Plaintiff's date last insured and beyond.  <u>Tr.</u> at 551-792, 1033-1340.[6]  During a new patient evaluation on July 7, 2011, Dr. Penaloza listed Plaintiff's relevant past medical history as hyperlipidemia and glaucoma, including glaucoma surgery approximately five years earlier.  <u>Id.</u> at 675, 679.  His physical examination was normal in all respects.  <u>Id.</u> at 677-78.  Dr. Penaloza's impressions included mixed hyperlipemia, obstructive sleep apnea, and glaucoma with intraocular pressure reported to be in the normal range.  <u>Id.</u> at 678-79.  Dr. Penaloza prescribed loratadine and Pravastatin Sodium in addition to low-dose aspirin and fish oil, and

---

[5]Plaintiff's impairments will be defined as necessary.

[6]Some of Dr. Penaloza's treatment notes are duplicated elsewhere in the record. <u>Tr.</u> at 797-878.  The title in Spanish for Dr. Penaloza's practice was Centro de Salud Latino.  <u>E.g.</u>, <u>id.</u> at 797.

ordered a sleep study.  Id. at 678, 679.[7]  A sleep study performed on October 10, 2011,

confirmed the diagnosis of obstructive sleep apnea.  Id. at 772-73.[8]  On December 30,

2011, Dr. Penaloza noted Plaintiff's obstructive sleep apnea diagnosis, id. at 660, 666,

and referred him to an ophthalmologist because he reported that his glaucoma and visual

acuity had both deteriorated.  Id. at 665.  Plaintiff's physical examination remained

normal in all respects.  Id. at 664.

Dr. Penaloza continued to treat Plaintiff for a variety of routine physical problems

throughout 2012 and 2013, including among other conditions gastro-intestinal reflux,

cellulitis, skin infections, hemorrhoids, and changed bowel habits, for which he received

conservative treatment such as prescription antibiotics and creams, over-the-counter

medications, and dietary counseling.  Tr. at 601-58.  On February 15, 2013, Plaintiff

complained of joint pain in both hands, "intermittent, episodic, and localized," which

worsened upon activity and weather changes, and ear pain with sensations of pressure

and fulness and decreased hearing.  Id. at 619, 623.  Dr. Penaloza added prediabetes and

joint pain with family history of arthritis to Plaintiff's list of problems, and added

naproxen to his list of medications.  Id. at 624-26.[9]  Progress notes from June 17, 2013,

_____

[7]Loratadine is an antihistamine.  See https://www.drugs.com/loratadine.html (last visited May 8, 2020).  Pravastatin (marketed as Pravachol) is used to lower cholesterol and triglycerides in the blood.  See https://www.drugs.com/pravastatin.html (last visited May 8, 2020).

[8]A subsequent sleep study with a CPAP was performed on March 6-7, 2012, with a diagnosis of moderate obstructive sleep apnea.  Tr. at 769-70.  Obstructive sleep apnea was also confirmed in a sleep study performed on November 17, 2014.  Id. at 766-67.

[9]Naproxen is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation. See https://www.drugs.com/naproxen.html (last visited May 8, 2020).

list Plaintiff's existing problems as ear pain, arthritis, joint pain in multiple sites, prediabetes, mixed hyperlipidemia, obstructive sleep apnea, glaucoma, and decreased visual acuity, id. at 610-11, and these remained the same on December 3, 2013, minus ear pain. Id. at 601-02. Meanwhile, throughout 2012 and 2013, Plaintiff's physical examinations consistently yielded normal results. See, e.g., id. at 656-57 (04/09/12), 644 (08/24/12), 637-38 (09/04/12), 631-32 (10/09/12), 624 (02/15/13), 615 (06/17/13), 606 (12/03/13).

Plaintiff treated for his eye problems with ophthalmologist Avani Shah, M.D., of Vision Specialists of the Lehigh Valley. Tr. at 401-438, 951-1023. On August 30, 2012, Plaintiff reported that "floaters" in his left eye had resolved and that he experienced an occasional scratchy sensation in both eyes, negative for pain and positive for irritation. Id. at 421. Plaintiff was diagnosed with posterior vitreous detachment ("PVD") of the left eye ("OS"), characterized as "stable," and POAG. Id. at 420. The ophthalmologist started Plaintiff on Xalatan. Id.[10] Plaintiff's diagnoses remained consistent during follow-up visits, during which Plaintiff exhibited stable interocular pressure ("IOP") and stable visual acuity in both eyes with glasses. See, e.g., id. at 419 (10/16/12 – Plaintiff denied floaters, pain or tearing, visual acuity "stable"), 416 (10/02/13 – "IOP stable despite stopping drops, [Plaintiff] strongly advised to continue"), 412 (07/02/14 – advanced glaucoma "still stable," visual focus improved, "stable on Xalatan").

---

[10]Xalatan (generic latanoprost) is an ophthalmic glaucoma agent that lowers pressure inside the eye by increasing the amount of fluid that drains from the eye. See https://www.drugs.com/xalatan.html (last visited May 8, 2020).

On October 28, 2014, during a follow-up with ophthalmologist George W. McGinley, M.D., a colleague of Dr. Shah, Plaintiff reported a loss of visual acuity in his left eye during the previous week, with whiteness lasting six or seven hours before it resolved. Tr. at 407. On examination, Plaintiff exhibited stable IOP. Id. at 406. Dr. McGinley sent a letter to Dr. Penaloza suggesting that Plaintiff undergo a carotid ultrasound in response to the temporary loss of visual acuity. Id. at 778-79. On December 8, 2014, a high-resolution carotid ultrasound with contrast was performed, revealing minimal stenosis of the carotid arteries bilaterally. Id. at 739, 741. Dr. Penaloza noted the results in his December 10, 2014 progress notes, indicating that Plaintiff's carotid ultrasound revealed 20% stenosis, for which he would continue taking statin medication and fish oil. Id. at 582.

On December 2, 2014, Plaintiff sought emergency room treatment at Lehigh Valley Hospital for left ear pain. Tr. at 742-46, 749-54, 776. Plaintiff appeared in no acute distress and had normal examination findings, except for drainage and tenderness of his left ear. Id. at 776. Plaintiff was diagnosed with left otitis externa and acute mastoiditis on the left, without complications, and was treated with antibiotics and pain medication. Id. at 745, 753, 776.[11]

On January 13, 2015, Plaintiff returned to Dr. Penaloza with chief complaints of left ear pain associated with cold exposure, and dental pain and broken teeth. Tr. at 567. A list of Plaintiff's problems included acute mastoiditis without complication, bilateral

---

[11]Acute mastoiditis is inflammation of the mastoid region, consisting of the conical prominence of the bone behind the ear, to which neck muscles are attached. Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 1112.

carotid artery stenosis, rheumatoid arthritis by family history, pain in joints, multiple sites, prediabetes, mixed hyperlipidemia, obstructive sleep apnea, glaucoma, and decreased visual acuity.  Id. at 567-68.  Plaintiff's physical exam yielded normal findings, id. at 571, and his medications and supplements were continued.  Id. at 572-74.  Routine follow-up visits throughout 2015 documented similar complaints and examination findings.  See, e.g., id. at 558-59 (06/03/15), 1048-49 (07/24/15), 1053-54 (09/09/15), 1063-64 (12/16/15).[12]

On July 8, 2015, State agency medical consultant Gerald A. Gryczko, M.D., reviewed Plaintiff's medical records and assessed Plaintiff's functional limitations as part of the initial disability determination.  Tr. at 53-58.  Dr. Gryczko listed Plaintiff's impairments as glaucoma and other diseases of the circulatory system, and he assessed Plaintiff under Listing 12.04, vision impairment.  Id. at 52, 53.  The doctor opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; could stand and/or walk and sit about six hours each in an eight-hour workday; was unlimited in the ability to push/pull, except for the lift/carry weight limitation; and could occasionally perform all postural activities.  Id. at 54.[13]  Regarding visual limitations, Dr. Gryczko opined that Plaintiff had limited near acuity, far acuity,

---

[12]Some of the progress notes indicates diagnoses, including anxiety, depression, and fibromyalgia, that are not indicated elsewhere in Plaintiff's records, and Plaintiff does not rely on these conditions in challenging the ALJ's denial of his claim.  See, e.g., tr. at 1053, 1063, 1132.

[13]The form defines "Occasionally" as "1/3 or less of an 8 hour day," and "Frequently" as "more than 1/3 up to 2/3 of an 8 hour day."  Tr. at 54.

and depth perception, all on the left side, and was unlimited in accommodation, color vision, and field of vision.  Id. at 55.  Plaintiff had no environmental limitations, except for sensitivity to light variations.  Id. at 55-56.  Dr. Gryczko explained that Plaintiff's records supported findings of chronic glaucoma, advanced on the left side, and minimal carotid stenosis, with normal neuromuscular function, and that Plaintiff participates in daily activities such as caring for personal needs and performing routine household chores, is able to drive, has worked after the alleged onset date, can ambulate without an assistive device, and has not taken narcotic pain medication.  Id. at 56.

In progress notes dated August 7, 2017 -- more than a year and a half after Plaintiff's insured status expired -- Dr. Penaloza listed Plaintiff's diagnoses as, among other things, acute mastoiditis, right ear pain, glaucoma, hyperlipemia, joint pain, obstructive sleep apnea, occlusion and stenosis of the carotid artery, pre-diabetes, and rotator cuff strain.  Tr. at 1132.  The doctor indicated that Plaintiff's glaucoma, left eye blindness, carotid stenosis, and bilateral chronic shoulder pain despite physical therapy, anti-inflammatory medications, and injections, were severe conditions that impacted the quality of his life.  Id.[14]  Dr. Penaloza further opined that Plaintiff's chronic medical condition had lasted for more than a year and "really prevents him from working."  Id.

On August 30, 2017, orthopedist M. Cooper, M.D., of LVPG Orthopedics, completed a medical source statement regarding Plaintiff's ability to do physical work-

---

[14]Dr. Panaloza first noted Plaintiff's shoulder condition on October 5, 2016, nearly a year after Plaintiff's date last insured, diagnosing it as rotator cuff strain, and noting that Plaintiff received steroid injections.  Tr. at 1096.

related activities.[15]  Tr. at 1025-31.  Dr. Cooper opined that Plaintiff could occasionally lift and/or carry up to ten pounds, and could sit, stand, and walk eight hours each in an eight-hour workday without interruption.  Id. at 1026-27.[16]  Plaintiff could occasionally reach and push/pull and otherwise had no limitations in the use of his hands, and the doctor did not indicate any limitations regarding Plaintiff's use of his feet.  Id. at 1028. Regarding postural activities, Dr. Cooper opined that Plaintiff could occasionally climb ladders, ropes, and scaffolds, but never crawl.  Id. at 1029.  The doctor indicated that Plaintiff's impairments affect his vision, with no elaboration, and the doctor did not indicate any environmental limitations or express any opinion regarding the activities Plaintiff could perform in light of his physical impairments.  Id. at 1029-30.

On November 12, 2017, following Plaintiff's administrative hearing, the ALJ propounded interrogatories upon independent medical expert Lawrence S. Schaffzin, M.D., F.A.C.S.  Tr. at 1381-83.  The form asked for the doctor's assessment for the period from April 10, 2010, through the present.  Id. at 1381.  Dr. Schaffzin identified Plaintiff's impairment as bilateral primary open angle glaucoma, and opined that Plaintiff did not meet Listing 2.02 because his visual acuity is better than 20/200, and that he did not meet Listings 2.03 or 2.04 because his field of vision is full and with full sensitivity in his right eye.  Id. at 1381, 1382.  The doctor did not assess Plaintiff with any exertional limitations, opined that he should never climb ladders, ropes, or scaffolds, noted that he

---

[15]There is no indication on the form that Dr. Cooper's assessments relate back to the period before Plaintiff's date last insured.

[16]The form defines "Occasionally" as "very little to one-third of the time."  Tr. at 1026.

has limited field of vision in the left eye, and that he should avoid hazards such as heights and dangerous machinery "but can avoid ordinary workplace hazards." Id. at 1382.

On the same day, Dr. Schaffzin also completed a medical source statement regarding Plaintiff's ability to do physical work-related activities. Tr. at 1384-89. The doctor opined that Plaintiff could continuously lift and/or carry fifty-one or more pounds; could sit, stand, and walk for eight hours each in an eight-hour workday without interruption; had no limitations in the use of his hands and feet; and could never climb ladders, or scaffolds, but otherwise had no postural limitations. Id. at 1384-87. In considering Plaintiff's visual impairment, Dr. Schaffzin indicated that Plaintiff could avoid ordinary hazards in the workplace, read very small print, read ordinary newspaper or book print, view a computer screen, and determine differences in shape and color of small objects such as screws, nuts, or bolts. Id. at 1387. He should avoid unprotected heights and moving mechanical parts. Id. at 1388. The doctor opined that Plaintiff's physical impairments did not limit his activities of daily living. Id. Lastly, Dr, Shaffzin indicated that functional limitations he identified were present since June 1, 2014. Id.

### C.   Other Evidence

At the November 3, 2017 administrative hearing, Plaintiff testified that he suffers from glaucoma in both eyes, left worse than right. Tr. at 1403. He sometimes loses vision in his left eye, including an incident in October 2014 when he woke up with blood in his eye and lost vision for several hours, while medication has controlled the loss of vision in his right eye. Id. at 1403-04. Eye pain sometimes wakes him up at night, and his vision problems cause headaches. Id. at 1404, 1405. He sees specks and flashes in

his eyes. Id. at 1405. Plaintiff also testified that he cannot raise his arms due to pain in both shoulders, for which he has received injections and a course of physical therapy. Id. at 1406, 1407-08. He had carpal tunnel surgery on both hands and has arthritis pain in his hands and feet. Id. at 1407.

Plaintiff stated that his eye problems affect his normal activities and caused him to fall down the stairs on one occasion about two years earlier. Tr. at 1404-05. He cannot perform his prior work or do household chores due to limitations with his shoulders and pain. Id. at 1408. When asked if he has a driver's license, Plaintiff replied, "Yes, of course." Id. at 1400.

The record also includes a Function Report completed on behalf of Plaintiff. Tr. at 286-93. The form indicated that vision problems prevent Plaintiff from performing his prior work, explaining that he cannot use the welding machine because it is painful to look at the light, and that he cannot paint because his vision is blurry. Id. at 286. He also loses his balance. Id. at 291. He can get himself and his children food and get them ready for the day, perform light household chores, and take care of his personal care and household finances. Id. at 287-89. He goes out daily with his children and to take his wife to work, shops weekly for groceries and to get supplies for his wife, reads the newspaper, and goes for walks when the weather is warm. Id. at 289-90.

A vocational expert ("VE") testified at Plaintiff's November 2, 1017 administrative hearing. Tr. at 1409-11. The VE testified that Plaintiff's past relevant work as a painter of transportation equipment is skilled and medium exertion. Id. at 1409-10. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age,

education, and work experience who would be limited to medium work, cannot climb ladders, ropes, or scaffolds, but can occasionally engage in other postural activities, and can tolerate no exposure to hazards such as unprotected heights or dangerous machinery. Id. at 1410. The VE responded that the limitations precluded Plaintiff's past relevant work, but that other work existed that such a person could perform, including laundry laborer and cleaner of lab equipment. Id. at 1411-12.

The VE also responded to interrogatories from the ALJ following the hearing which adjusted the RFC of the hypothetical individual. Tr. at 371-73. The ALJ asked the VE to assume an individual capable of performing a full range of work at all exertional levels who was unable to climb ladders, ropes, or scaffolds, could tolerate no exposure to unprotected heights or dangerous machines, could perform job duties that do not require peripheral vision on the left side, and could not perform work involving moving production lines or similar situations if approached from the left. Id. at 371. The VE responded that such person could not perform Plaintiff's past work, but provided three jobs such person could perform that were unskilled and classified as either heavy or very heavy. Id. at 371-72.

**D.    The ALJ's Consideration of Medical Opinion Evidence**

Plaintiff presents a single claim, arguing that the ALJ improperly weighed the medical opinion evidence. Doc. 15 at 5-8. Defendant counters that the ALJ's consideration of the medical opinion evidence is supported by substantial evidence. Doc. 16 at 5-13.

A treating physician's opinion is entitled to controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[17] A treating physician's opinion is entitled to greater weight than that of a physician who conducted a one-time examination of the claimant as a consultant. See, e.g., Adorno v. Shalala, 40 F.3d 43, 47-48 (3d. Cir. 1994) (citing Mason v. Shalala, 994 F.2d 1058, 1067 (3d. Cir. 1993)). When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as he does not "reject evidence for no reason or for the wrong reason." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); Plummer v. Apfel, 196 F.3d 422, 429 (3d Cir. 1991); see also 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). When a treating physician's opinion is not accorded controlling weight, the ALJ should consider a number of factors in determining how much weight to give it; the examining relationship (more weight accorded to an examining source), the treatment relationship (including length and nature of the treatment relationship), supportability, consistency, specialization, and other factors. Id. § 404.1527(c)(1)-(6).

---

[17]Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence, eliminating the assignment of weight to any medical opinion. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's applications were filed prior to the effective date of the new regulations, the opinion-weighing paradigm is applicable.

After summarizing the medical evidence and Plaintiff's testimony, the ALJ stated:

> As for the opinion evidence, in August 2017, Dr. Penaloz[]a
> indicated in his progress notes that [Plaintiff's] glaucoma, left
> eye blindness, carotid stenosis, and bilateral chronic shoulder
> pain despite physical therapy, anti-inflammatory medications,
> and . . . steroid injections are severe conditions that impact his
> quality of life.  He opined that this medical condition lasted
> for more than a year and does prevent [Plaintiff] from
> working.  I accord no weight to Dr. Penaloz[]a's opinion.
> Although he is a treating physician with a longitudinal
> perspective regarding [Plaintiff's] condition, his opinion that
> [Plaintiff's] condition prevents him from working is an
> opinion on an issue reserved for the Commissioner, and,
> therefore, is entitled to no special weight on the ultimate issue
> of disability.  Furthermore, Dr. Penaloz[]a did not provide
> specific functional limitations resulting from [Plaintiff's]
> impairments, his opinion was rendered well after [Plaintiff's]
> date last insured and outside the period at issue, and his
> treatment notes prior to the date last insured do not support
> his opinion.  His physical exam findings consistently showed
> heart with regular rate and rhythm with no rubs, murmurs, or
> gallops, intact distal pulses, normal muscle strength and tone
> throughout, normal deep tendon reflexes, normal sensation,
> and no tenderness to palpation.  He treated [Plaintiff]
> conservatively during the period at issue with naproxen and
> low-dose aspirin.
>
> In June 2017, orthopedist [Dr. Cooper] provided responses to
> a medical source statement of ability to do physical work
> related activities form.  He opined that [Plaintiff] is able to sit,
> stand, and walk eight hours each in an eight-hour workday
> and lift and/or carry up to 10 pounds occasionally.  He
> occasionally could reach in all directions and push/pull
> bilaterally, climb ramps, stairs, ladders, ropes, or scaffolds,
> but never crawl.  He indicated that none of [Plaintiff's]
> impairments affect his vision.  I accord little weight to Dr.
> Cooper's opinion, as it significantly postdates [Plaintiff's]
> date last insured, and it is not consistent with treatment
> records prior to the date last insured.  Physical exams
> consistently showed normal muscle strength and tone
> throughout, normal deep tendon reflexes, normal sensation,
> and no tenderness to palpation.  [Plaintiff] was treated

conservatively during the period at issue with naproxen and low-dose aspirin.

Following the hearing, the undersigned propounded interrogatories upon independent medical expert [Dr. Schaffzin]. In terms of functional limitations, Dr. Schaffzin opined that [Plaintiff] has no exertional limitations, but he should never climb ladders, ropes, or scaffolds, he has limitation of field of vision in the left eye, and he should avoid concentrated exposure to hazards such as heights and dangerous machinery. He is able to avoid ordinary workplace hazards. Dr. Schaffzin further opined that [Plaintiff] is able to read very small print, read ordinary newspaper or book print, view a computer screen, and determine differences in shape and color of small objects such as screws, nuts, or bolts. He indicated that these functional limitations were present since June 1, 2014. I accord great weight to Dr. Schaffzin's opinion. He is a board certified ophthalmologist and independent medical expert who is familiar with the agency's rules and regulations, and he reviewed the medical evidence of record. His opinion is consistent with the record, which shows that [Plaintiff] has stable primary open-angle glaucoma bilaterally, advanced in the left eye, stable intraocular pressure bilaterally, and stable visual acuity in both eyes with glasses.

The State agency medical consultant [Dr. Gryczko] opined that [Plaintiff] is able to perform a range of medium work with postural, visual, and environmental limitations. I accord great weight to Dr. Gryczko's opinion. He is familiar with the agency's rules and regulations, he reviewed the evidence of record, and his opinion is fairly consistent with the record as a whole. However, the medical evidence does not support exertional or visual limitations as he opined. Ophthalmologic exams showed continued but stable primary open-angle glaucoma bilaterally, advanced in the left eye, stable intraocular pressure bilaterally, and stable visual acuity in both eyes with glasses. Physical exam findings consistently showed heart with regular rate and rhythm with no rubs, murmurs, or gallops, intact distal pulses, normal muscle strength and tone throughout, normal deep tendon reflexes, normal sensation, and no tenderness to palpation. Dr. Penaloz[]a treated [Plaintiff] conservatively during the period at issue with naproxen and low-dose aspirin.

Tr. at 32-33 (exhibit citations omitted).

Plaintiff argues that the ALJ improperly accorded more weight to the opinions of Drs. Schaffzin and Gryczko than to the opinions of Dr. Penaloza, Plaintiff's treating physician, and the orthopedist Dr. Cooper. Doc. 15 at 5-8. To the contrary, I find that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence.

First, the ALJ provided adequate explanation for not according great or controlling weight to the opinions of Drs. Penaloza and Cooper. Most obviously, the opinions of Drs. Penaloza and Cooper were both rendered in August 2017, more than a year and a half after Plaintiff's date last insured of December 31, 2015, see 1026-1031, 1132, and therefore have questionable relevance for the period at issue.[18] In contrast, Dr. Grycko's assessment of Plaintiff occurred on July 8, 2015, approximately five months prior to Plaintiff's date last insured, id. at 54-56, and Dr. Shaffzin explicitly indicated that the functional limitations he identified applied to Plaintiff's condition since June 1, 2014, which date was more than four years after his alleged onset date and prior to his date last insured. Id. at 1381-83. Furthermore, the opinions of Drs. Penaloza and Cooper are not accompanied by adequate supporting explanation. For example, Dr. Penaloza expressed his opinion regarding Plaintiff's disabling condition in the context of progress notes, rather than in a medical source statement or formal RFC assessment, see id. at 1132, and

---

[18]Although Dr. Penaloza stated that Plaintiff's condition "did last for more than year," see tr. at 1132, the statement is ambiguous, and even back dating the doctor's opinion by a year would not place it within the relevant time period.

Dr. Cooper's medical source statement is a partially-completed check-the-box form with no supporting explanation whatsoever.  Id. at 1026-31.  See 20 C.F.R. § 404.1524(c)(3-4) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Moreover, Dr. Penaloza's opinion that Plaintiff's medical condition "really prevents him from working," tr. at 1132, is not entitled to special weight because the issue of disability is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Social Security Ruling 96-5p, "Policy Interpretation Ruling titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Additionally, treatment records do not support Dr. Penaloza's opinion that Plaintiff had disabling limitations, nor Dr. Cooper's assessment that Plaintiff could lift and/or carry only ten pounds.  Plaintiff had consistently normal physical examination findings throughout the relevant period, exhibiting no acute distress, regular heart rate and rhythm, normal muscle strength and tone, normal deep tendon reflexes, normal sensation, and no tenderness.  Dr. Penaloza treated Plaintiff conservatively with naproxen and over-the-counter pain medication, and Plaintiff's reported daily activities included the ability to care for personal needs, perform routine household chores, drive a car.

Although Plaintiff testified that he cannot raise his arms due to pain in both shoulders and carpal tunnel and arthritis pain in his hands and feet, id. at 1406, 1407-08, these conditions appeared and/or worsened after his date last insured.

Second, substantial evidence supports the ALJ's decision to accord more weight to the evaluations of Drs. Schaffzin and Gryczko.  As previously noted, these are the only medical source opinions made during, or explicitly applied to, the period before Plaintiff's date last insured, and they are consistent with the normal physical examination findings and conservative treatment provided by Dr. Penaloza, as well as Plaintiff's reported daily activities, during the relevant period.

Plaintiff argues that the ALJ erred in according great weight to Dr. Schaffzin's opinions because the doctor "is an ophthalmologist who only evaluated the Plaintiff's visual impairments."  Doc. 15 at 7.  This singular objection is peculiar because Dr. Schaffzin is a specialist whose expert opinion was sought by the ALJ precisely to evaluate the extent and limiting effects of Plaintiff's glaucoma and associated reduced visual acuity, and because the ALJ only considered Dr. Schaffzin's opinion in the context of Plaintiff's vision impairments.  Tr. at 33.  Moreover, the ALJ explained that the doctor's opinion was consistent with the medical record as previously summarized, including findings of POAG bilaterally, advanced in the left eye, stable IOP bilaterally, and stable visual acuity in both eyes with glasses.  As a result, the ALJ gave great weight to Dr. Schaffzin's opinions that Plaintiff should avoid climbing ladders, ropes, and scaffolds, and exposure to hazards such as dangerous machinery and heights, but that he retained the ability to avoid ordinary workplace hazards, read small print, view a

computer screen, and determine differences in shape and color of small objects.  In short, this aspect of the ALJ's opinion is supported by substantial evidence.

Plaintiff argues that the ALJ improperly relied on Dr. Gryczko's opinion because the doctor did not review records from before 2015, and therefore he did not have the benefit of the fully developed medical record.  Doc. 15 at 7.  Plaintiff is incorrect.  Dr. Gryczko specifically identified the medical evidence he reviewed, which covers the period from July 2011 through June 2015, which was one month before the doctor's assessment and only six months prior to Plaintiff's date last insured.  Tr. at 51-52. Moreover, contrary to Plaintiff's suggestion, it is not error for the ALJ to give greater weight to the opinion of a state agency consultant such as Dr. Gryczko, even if the consultant's opinions are rendered first in time, provided the subsequent medical evidence does not require interpretation or involve a deterioration rather than improvement in the claimant's condition.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (there is "always some time lapse between the consultant's report and the ALJ hearing and decision," and "Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it"); see also Resnick v. Colvin, Civ. No. 15-233, 2016 WL 7007569, at *10 (M.D. Pa. Mar 22, 2016) (R&R adopted Nov. 28, 2016) (reliance on Chandler inappropriate when subsequent evidence required interpretation of cognitive and psychological tests); Santee v. Astrue, Civ. No. 12-4853, 2014 WL 2925433, at *3 (E.D. Pa. June 30, 2014) (ALJ properly relied on consultant's opinion where subsequently produced records "documented the same complaints and conditions, without significant change").  Here,

the medical evidence from the six months between Dr. Gryczko's opinion and Plaintiff's date last insured did not require interpretation or indicate a deterioration in Plaintiff's condition.  See, e.g., tr. at 558-59 (06/03/15), 1048-49 (07/24/15), 1053-54 (09/09/15), 1063-64 (12/16/15).

Plaintiff also argues that the ALJ erred in according great weight to Dr. Gryczko's opinion without adopting the exertional limitations contained therein.  Doc. 15 at 7. However, an ALJ is not required to include each specific limitation in an RFC assessment or in a hypothetical to a VE.  See Pascarello v. Berryhill, No. 18-3406, 2019 WL 2288233, at *8 (E.D. Pa. May 28, 2019) (Heffley, M.J.) ("[A]n ALJ is not required to adopt all limitations in a medical opinion, even if the ALJ affords the medical opinion significant weight.") (citing Wilkinson v. Comm'r of Soc. Sec., 558 F. App'x 254, 256 (3d Cir. 2014)).  As the Third Circuit explained in Wilkinson, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight," because "the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner."  558 F. App' x at 256 (citing 20 C.F.R. § 404.1527(d)(2)).  Here, the ALJ considered Dr. Gryczko's opinion in the context of the entire record, and adequately explained the bases for assessing less restrictive limitations than those set forth by the consultant.  Therefore, the ALJ's opinion in this regard is supported by substantial evidence.

V.      **<u>CONCLUSION</u>**

The ALJ properly considered the medical opinion evidence, and the ALJ's decision is supported by substantial evidence.  Accordingly, I will affirm the Commissioner's decision denying Plaintiff's application for benefits.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GUSTAVO PUERTO                    :        CIVIL ACTION
                                  :
            v.                    :
                                  :
ANDREW SAUL, Commissioner of      :        NO.  19-3109
Social Security                   :

## **O R D E R**

AND NOW, this 27th day of May, 2020, upon consideration of Plaintiff's request

for review (Doc. 15), the response (Doc. 16), and after careful consideration of the

administrative record (Docs. 13 & 17), IT IS HEREBY ORDERED that:

1.    Judgment is entered affirming the decision of the Commissioner of Social
      Security and the relief sought by Plaintiff is DENIED, and

3.    The Clerk of Court is hereby directed to mark this case closed.

                                  BY THE COURT:

                                  /s/ ELIZABETH T. HEY

                                  _____

                                  ELIZABETH T. HEY, U.S.M.J.